UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-12239-RGS

PETER DAVENPORT

v.

TOWN OF READING

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

October 15, 2024

STEARNS, D.J.

Plaintiff Peter Davenport filed this action against defendant Town of Reading (the Town), asserting that it violated his constitutional rights when it retained the surplus remaining from the foreclosure sale of his property after satisfaction of his tax debt. The parties now cross-move for partial summary judgment on Davenport's Fifth Amendment claim[1] pursuant to

---

[1] The Town also moves for summary judgment on Davenport's Eighth Amendment claim, arguing that the availability of a Fifth Amendment takings claim forecloses relief through the Eighth Amendment. *See* Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. [Dkt # 23] at 17. Davenport does not substantively address this argument in his opposition. The court accordingly considers the point undisputed and, because Davenport prevails on his Fifth Amendment claim, will allow the Town's motion for judgment on the Eighth Amendment without further analysis.

Federal Rule of Civil Procedure 56. For the following reasons, the court will allow Davenport's motion and allow in part and deny in part the Town's motion.

## FACTUAL BACKGROUND

Davenport failed to pay real estate taxes on 179 Pearl Street, Reading, Massachusetts (the Property) for the fiscal year 2007. The Town executed a tax lien on the Property and, when that balance remained unpaid for several years, filed a petition to foreclose in 2013. The Land Court issued a judgment in the Town's favor on April 24, 2014. Nine years later, on January 19, 2023, the Town sold the property for $400,000. Although the tax lien was only an estimated $150,546.48, the Town retained the remaining $219,453.52[2] from the sale. Davenport filed the instant action to recoup that surplus.

## LEGAL STANDARD

"Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902

---

[2] The Town paid $30,000 in attorneys' fees and costs, reducing the surplus amount. *See* Pl.'s Mem. in Supp. of Mot. for Summ. J. (Davenport Mot.) [Dkt # 19] at 4.

F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## DISCUSSION

There are three main points of contention between the parties: (1) Did the then-controlling version[3] of the tax foreclosure system in Massachusetts pass constitutional muster?; (2) If it did not, when did Davenport's constitutional injury accrue?; and (3) If Davenport's injury accrued within the limitations period, is the Town entitled to an offset for unjust enrichment? The court addresses each issue in turn.

**Constitutionality**

The court need not linger over the issue of constitutionality. In 1965, the Massachusetts Supreme Judicial Court (SJC) conclusively ruled that Chapter 60 does not allow a property owner to recoup any of the surplus

---

[3] The Massachusetts Legislature amended the relevant statutory provision – Chapter 60 of the Massachusetts General Laws – in the summer of 2024 to create a comprehensive legal framework for property owners to reclaim excess equity after tax foreclosure. For the purposes of this opinion, any mention of Chapter 60 refers to the pre-amendment version of the statute unless otherwise noted.

funds remaining from a tax foreclosure sale after satisfaction of the property owner's debt. *Kelly v. City of Boston*, 348 Mass. 385, 389 (1965); *see also id.* at 388-389 (concluding that "the Legislature intended the surplus from a sale of land taken for nonpayment of taxes . . . to belong to the municipality" and that "a municipality has no power to pay out" the surplus to the property owner). The United States Supreme Court concluded in 2023 that this type of tax foreclosure system is unconstitutional. *See Tyler v. Hennepin County*, 598 U.S. 631, 642, 647 (2023). The Supreme Court's decision, however, does not give this court leave to unilaterally ignore the SJC's interpretation of Chapter 60 and import a previously unavailable remedy into the statute.[4] The task of rewriting the statute to comply with *Tyler* instead rests with the legislature which has since exercised the prerogative to do so.[5]

---

[4] It is true that a session of the Massachusetts Land Court concluded that property owners could pursue relief through Massachusetts General Laws Chapter 79, § 10. *See Town of Tyngsborough v. Recco*, 2024 WL 2331197, at *5 (Mass. Land Ct. May 21, 2024). The Superior Court, however, reached the opposite conclusion when faced with the same issue. *See Mills v. City of Springfield*, No. 23-cv-00545, slip op. 16-17 (Mass. Sup. Ct. Apr. 18, 2024). And, in any event, a single Massachusetts Land Court decision hardly gives the court leave to disregard the clear holding of *Kelly* and chart a new course in state law. *See Smith v. Prudential Ins. Co. of Am.*, 88 F.4th 40, 57 (1st Cir. 2023).

[5] As noted earlier, *see supra* note 3, the Massachusetts Legislature answered the call to rewrite the statute. Presumably, if property owners could have obtained relief through Chapter 79, § 10, the Legislature would not have felt the need to enact such extensive legislation.

4

**Statute of Limitations**

The main dispute between the parties centers on the moment at which Davenport's injury occurred. Was it, as the Town contends, when the Town obtained absolute title to the property on April 24, 2014 (which would render the claims time-barred)? Or was it, as Davenport maintains, when the Town refused to return to him the surplus funds from the January 23, 2023 sale of the Property?

The court concludes that Davenport holds the winning card on this issue.[6] His claim is not that the Town violated the Fifth Amendment by seizing the Property. To the contrary, Davenport concedes that the Town had a right to obtain absolute title to the Property and sell it. His claim instead is premised on the Town divesting him of his interest in the "money remaining" after satisfaction of his tax debt – an interest which, under *Tyler*, remains even after a municipality obtains absolute title to property – without due process of law. *Tyler*, 598 U.S. at 638; *cf. United States v. Lawton*, 110 U.S. 146, 150 (1884) (property owner had a claim to "the surplus money *arising on the original sale*") (emphasis added). That deprivation only

---

[6] The amended version of Chapter 60 largely resolves any concerns about claim accrual. It requires a municipality explicitly elect to sell or retain the property, and any sale or, in the case of retention, appraisal must occur within a specific timeframe so that the surplus value may be calculated.

5

occurred in January of 2023, when, having sold the Property, the Town refused to convey any surplus funds to Davenport.[7]

**Unjust Enrichment**

Relying on a theory of unjust enrichment, the Town seeks to offset any damages award by the fair market value of the benefit Davenport received from living rent-free (and tax-free) on the Property for nine years after the Town obtained absolute title to it. The problem is this: A fundamental prerequisite to any unjust enrichment finding is that the enrichment be "unjust." *See Bonina v. Sheppard*, 91 Mass. App. Ct. 622, 625 (2017) ("The plaintiff must establish 'not only that the defendant received a benefit, but also that such a benefit was unjust.'"), quoting *Metropolitan Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013). Here, because any benefit received by Davenport during this period resulted from the Town's own failure to initiate eviction proceedings and sell the Property, his enrichment cannot reasonably be considered unjust.

---

[7] A takings claim could, perhaps, have arisen earlier if Davenport had some reason to know that a sale would *not* occur – if, for example, the Town had communicated an intent to retain the Property, or if the Town had ignored his attempts to advance proceedings. Under such circumstances, it might be reasonable to consider the Town as having seized his interest in the excess value of the Property. The court need not decide the issue, however, because there is no suggestion that Davenport knew or had reason to know that no sale would occur at any point between April 24, 2014 (when the Town obtained absolute title) and January 19, 2023 (when the Property was sold).

**ORDER**

For the foregoing reasons, Davenport's motion for summary judgment is <u>ALLOWED</u> and the Town's motion for summary judgment is <u>ALLOWED IN PART</u> and <u>DENIED IN PART</u>. Judgment shall enter in Davenport's favor on the Fifth Amendment claim and in the Town's favor on the Eighth Amendment Claim.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE